# In the United States Court of Federal Claims

Case No. 08-877C
Filed Under Seal: January 5, 2010
Filed for Publication: January 26, 2010

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| K-MAR INDUSTRIES, INC., | |
| *Plaintiff,* | |
| v. | Bid Protest; 5 U.S.C. § 706; Arbitrary and Capricious, Abuse of Discretion, and Otherwise Not in Accordance with Law Standard; Rational Basis; Service Contract Act, 41 U.S.C. § 351; 48 C.F.R. § 52.222-46; 48 C.F.R. § 22.1103; *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308 (Fed. Cir. 2007) |
| THE UNITED STATES, | |
| *Defendant,* | |
| and | |
| FIVE RIVERS SERVICES, LLC, | |
| *Defendant-Intervenor.* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*Marilyn H. David*, with whom were *Russell S. Gill*, Russell S. Gill, PLLC, Biloxi, Mississippi, and *Terrence M. O'Connor*, Albo & Oblon LLP, Arlington, Virginia, for Plaintiff.

*William P. Rayel*, Trial Attorney, with whom were *Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director; *Brian M. Simkin*, Assistant Director, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C., for Defendant.

*Robert J. Moss*, with whom was *David M. Nadler*, Dickstein Shapiro LLP, Washington, D.C., of Counsel, for Defendant-Intervenor.

**OPINION and ORDER**

**SMITH**, Senior Judge:

This bid protest arises from the Army's award of a contract to Five Rivers Services, LLC (Five Rivers) for visual information services at Fort Knox, Kentucky. K-Mar Industries, Inc. (KMI), the incumbent contractor, protests this award alleging that the Army's selection of Five Rivers was

irrational and not in accordance with the Army's evaluation criteria. Following a bid protest before the GAO, and after having denied KMI's Motion for Preliminary Injunction in this Court, the Court now addresses the merits of KMI's bid protest Complaint.

After careful review and consideration, the Court hereby **GRANTS** Defendant's Cross-Motion for Judgment on the Administrative Record and **DENIES** Plaintiff's Motion for Judgment on the Administrative Record. Moreover, because the Plaintiff's claims fail on the merits, the Court further **DENIES AS MOOT** Plaintiff's request for a permanent injunction. As a result of this Opinion and Order, all other motions are also **DENIED AS MOOT**.

## I. BACKGROUND

On May 21, 2008, the Army issued a solicitation for fixed-price visual information services contract at Fort Knox, Kentucky. (Def.'s Cross-Mot. for J. at 3). Those services included a wide range of multimedia, audio, video, and photographic services as described in the performance work statement. *Id.* The contract was to be awarded to the lowest "technically acceptable" offer, based on an offeror's past performance and the technical information submitted. *Id.* Of the proposals submitted, Five Rivers had the lowest bid at $7,825,495.44 and KMI had the second lowest bid at $_____. *Id.* at 5. In its offer, Five Rivers proposed that eight technical positions[1] be exempted from the Service Contract Act (SCA), 41 U.S.C. § 351 (2006).[2] However, because Five Rivers' offer was the lowest technically acceptable bid, Five Rivers was awarded the contract. *Id.*

On August 22, 2008, KMI initiated a bid protest action before the GAO and Five Rivers' performance was stayed pending the outcome in that forum. *Id.* at 5-6. The stay was lifted on November 4, 2008, after the GAO denied KMI's protest and held that the Army's evaluation was reasonable. *Id.* at 6. As a result, Five Rivers began phase-in of the contract and KMI filed its Complaint and a Motion for Preliminary Injunction in this Court. *Id.* Thereafter, the Court denied KMI's Motion for Preliminary Injunction because KMI was "unable to show any action that was unreasonable," and the Army's decision was "not arbitrary and capricious." (Order, Dec. 19, 2008.) Following that Order, the parties filed Cross-Motions for Judgment on the Administrative Record and are now before the Court on the merits of those motions. Oral argument was held and this decision follows.

---

[1] Of the eight technical positions exempted from the Service Contract Act, six of the eight were paid a greater hourly wage than their counterparts under the Independent Government Estimate (IGE), while only two were paid less than under the IGE. (Def.'s Cross-Mot. for J. at 17).

[2] The Service Contract Act, governs labor classifications, minimum wage rates for covered employees, and exempt employees in proposed government contract staffing plans. *See* 41 U.S.C. §§ 351-358 (2006).

## II. STANDARD OF REVIEW

The Court reviews agency decisions under the Administrative Procedure Act (APA). 5 U.S.C. § 706 (2006); *see also Impressa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001). Under the APA, the Court will not set aside an agency's decision unless it finds the decision to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). Moreover, the Court recognizes that agency officials are granted wide discretion in making procurement decisions. *Impressa*, 238 F.3d at 1332.

While the Court should not substitute its judgment for that of the agency, the agency decision is not shielded from a "thorough, probing, in-depth review." *Redland Genstar, Inc. v. United States*, 39 Fed. Cl. 220, 231 (1997) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971)). Thus, a bid award may be set aside if either the agency official's decision "lacked a rational basis," or if the procurement process involved "a violation of regulation or procedure." *Impressa*, 238 F.3d at 1332. In evaluating whether an agency official's actions were rational, the "disappointed bidder bears a heavy burden of showing that the award decision had no rational basis." *Id.* at 1333 (quotation marks omitted). Here, however, the Court finds that the Army acted with a rational basis and in accordance with law.

## III. DISCUSSION

KMI primarily argues that the Army violated the APA when they: (1) did not comply with its own evaluation criteria in evaluating staffing plans, labor classifications, and management positions, and gave Five Rivers' proposal a "technically acceptable" rating; and (2) failed to amend the solicitation to require and evaluate compensation plans after getting Five Rivers' initial offer, which exempted eight positions from the Service Contract Act. (Pl.'s Mot. for J. at 1-5.) In response, the Government argues, and the Court agrees, that the Army acted rationally and in accordance with law in awarding the contract to Five Rivers.

*A. The Army Acted Rationally When it Evaluated and Accepted Five Rivers' Staffing Plan*

KMI argues that the Army failed to follow its own evaluation criteria when it evaluated Five Rivers' proposed staffing plan. KMI further alleges that the Army should not have given Five Rivers's staffing plan a "technically acceptable" rating because Five Rivers had improperly classified six of the eight positions as "exempt" from the SCA. However, the Government points out that to be "technically acceptable" under the Army's evaluation criteria, the solicitation states that an offeror's: (1) staffing proposal must be evaluated based on "whether the offeror understands and is capable of providing the scope of services required;" and (2) labor classifications must be evaluated "against the government's estimate." (AR 239; Def.'s Cross-Mot. for J. at 3.) Hence, there was no mention of the SCA or any other labor law within the solicitation's evaluation criteria. Even when the solicitation's evaluation criteria is silent, there are instances when an agency is required to consider compliance with the SCA, beyond its own evaluation criteria.

While it is traditionally the Department of Labor that is charged with ensuring SCA compliance, *Collins Int'l Serv. Co. v. United States*, 744 F.2d 812, 816 (Fed. Cir. 1994), an agency may need to question an offeror's compliance with the SCA in two instances. First, an agency must consider SCA compliance when it is conducing a cost realism analysis for a cost-type contract. *E.g. T&M Joint Venture*, B-240747, 90-2 CPD ¶ 503, 1990 WL 293646, at *1-2 (Comp. Gen. Dec. 19, 1990). In this case, however, the Army was under no duty to perform a cost realism analysis because this was a fixed price contract, not a cost-type contract. 48 C.F.R. § 15.305(a)(1) (2009).

Second, an agency must consider SCA compliance if there is an "indication on the face of an offer that the offeror does not intend to pay SCA mandated wage rates . . . ." *N. Va. Serv. Corp.*, B-258036, 95-1 CPD ¶ 36, 1995 WL 27446, at *4 (Comp. Gen. Jan. 23, 2005). For instance, the GAO requires a clear intent not to comply with the SCA on the face of the offer, and not merely incorrect classifications or wage rates within an offer. *See, e.g.*, *SSDS, Inc.*, B-247598, 92-2, CPD ¶ 90, 1992 WL 199803, at *4 (Comp. Gen. Aug. 7, 1992). Once again, Five Rivers' proposal did not indicate any intent not to be bound by the SCA. In fact, it is Five Rivers, and not the Army, who bears the risk of loss in a fixed price contract, if its offer is below cost due to incorrect labor classifications or wage rates. *See* 48 C.F.R. § 16.202-1 (2009).

The GAO has further held that, even though a below cost offer that contains incorrect classifications and wage rates does not indicate an intent not to be bound by the SCA, such an offer may constitute a "legally objectionable below cost offer."[3] *See Free State Reporting, Inc.*, B-259650, 95-1, CPD ¶ 199, 1995 WL 226215, at *3-4 (Comp. Gen. Apr. 14, 1995). In *Free State*, the GAO rejected the argument that the offeror's price should be adjusted upward to account for a misclassification of employee wage rates under the SCA, and denied the protest. *Id.* Instead, because the offeror bears the burden of misclassification, the GAO held that the offeror is "still required to compensate these employees at the prescribed [SCA] rate," which does not effect the agency in a fixed price contract. *Id.*

Therefore, the Court holds that because the Army's solicitation evaluation criteria made no mention of the SCA or other labor laws, the Army did not violate its own criteria when evaluating Five Rivers' proposal. Furthermore, it is clear to the Court that the Army's evaluation was rational and not a violation of law because: 1) this was a fixed-price contract; 2) Five Rivers' did not indicate an intent not to be bound by the SCA on the face of its proposal; and 3) Five Rivers, not the Army, bore the risk of loss for a labor misclassification.

---

[3] A legally objectionable below cost offer, or "buy-in" as KMI refers to it in its briefs, is generally a problem when a contractor submits a below-cost offer during the initial solicitation period to get its "foot in the door," in an attempt to receive a subsequent contract. In that instance, the contractor chooses to lose money on the first contract, with the expectation that it will make up the difference on the second contract. There is no evidence nor any indication that this occurred here.

*B. The Army Was Not Required to Amend the Solicitation After Receiving Initial Offers*

KMI also argues that the Army failed to include 48 C.F.R. § 52.222-46 in the solicitation and failed to evaluate the offerors' compensation plans accordingly. However, the Government argues that 48 C.F.R. § 52.222-46 need not be included unless the contract amount exceeds $550,000 and the service to be provided requires a "meaningful number[] of professional employees." 48 C.F.R. § 22.1103 (2009). Neither party disputes that the value of the contract exceeded $550,000. However, the parties do dispute whether the contract required a meaningful number of professional employees.

In this case, the Army found both KMI and Five Rivers' proposals to be "technically acceptable," (AR 649, 1175), while the parties each proposed a different number of professional employees. If the contract would have required a meaningful number of professional employees, the IGE would have contemplated more than one professional employee (AR 653) and KMI's staffing plan, which contained only one professional employee (AR 1175), would not have been technically acceptable. Thus, the Court holds that the contract did not require a meaningful number of professional employees.

Finally, even assuming that the Army should have amended the solicitation to include 48 C.F.R. § 52.222-46, KMI's challenge is out of time since it did not "object to the terms of [the] government solicitation . . . prior to the close of the bidding process . . . ." *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1313 (Fed. Cir. 2007).

## IV. CONCLUSION

For the reasons set forth above, the Court hereby **GRANTS** Defendant's Cross-Motion for Judgment on the Administrative Record and Plaintiff's Complaint is hereby **DISMISSED**. The Clerk is directed to dismiss the case and enter judgment accordingly.

**It is so ORDERED.**

                 s/ Loren A. Smith
                 LOREN A. SMITH,
                 SENIOR JUDGE